# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ACE AMERICAN INSURANCE CO., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-489** |
| **GRAY INSURANCE CO.** | **SECTION: D (3)** |

## ORDER AND REASONS

Before the Court are two motions: Plaintiffs' ACE American Insurance Company and ACE Property and Casualty Insurance Company's Motion to Dismiss Counterclaim in Part Under Rule 12(b)(6) and for a More Definite Statement Under Rule 12(e)[1] and Plaintiffs' Motion to Exclude Exhibits to Gray's Opposition or, Alternatively, to Exclude Settlement-Related Exhibit and Convert Proceeding to Summary Judgment Under Rule 12(d).[2] Defendant Gray Insurance Company has filed responses in opposition to both motions,[3] and Plaintiffs have replied.[4] After careful consideration of the parties' memoranda, the counterclaim, and the controlling law, the Court GRANTS Plaintiff's Motion to Convert Proceeding to Summary Judgment Under Rule 12(d) and converts Defendant's Response in Opposition into a Motion for Summary Judgment under Fed. R. Civ. P. 56. It denies the remaining Motion to Dismiss Counterclaim in Part as moot.

---

[1] R. Doc. 25.
[2] R. Doc. 30.
[3] R. Docs. 28, 34.
[4] R. Docs. 29, 35.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[5]

This case arises from an explosion that occurred on October 8, 2015, at a gas-processing plant owned by Transcontinental or The Williams Companies, Inc. (collectively, "Transco") in Terrebonne Parish.[6] At the time of the explosion, several contractors, including the Furmanite Corporation and Danos and Curole Marine Contractors, LLC, were performing maintenance work on a portion of the plant known as the "slug catcher."[7] Transco and the contractors had a General Service Agreement, which mandated that each contractor procure an insurance policy and name Transco as additional insured.[8] Additionally, Furmanite and Danos had a Master Service Contract, requiring Furmanite to procure an insurance policy and name Danos, along with other entities, as additional insureds.[9] Both Furmanite and Danos did so, with Furmanite securing policies from ACE American Insurance Company and ACE Property and Casualty Insurance Company (collectively, "Chubb") and Danos securing policies from Gray Insurance Company ("Gray").[10] Chubb claims that Transco is an additional insured under the Gray policies and that the Gray policies are not excess to the Chubb policies and that both primary policies contain "other insurance" provisions that require the policies to share costs.[11] As a result of the explosion, several lawsuits were filed against Transco, Danos, and

---

[5] The factual background is taken from Plaintiff's Complaint (R. Doc. 1) and Defendant's Answer (R. Doc. 19). Their inclusion here is merely for background and does not afford them the benefit of truth.
[6] R. Doc. 1 at ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 10.
[9] *Id.* at ¶ 11.
[10] *Id.* at ¶¶ 12-15.
[11] *Id.* at ¶¶ 18-21.

Furmanite, and, as a result of the litigation, Chubb states that it spent $4.5 million in defense costs to defend these lawsuits.[12]

Chubb filed the present suit on March 12, 2025, requesting a declaratory judgment that "Gray had an obligation to defend and indemnify Transco in the Underlying Lawsuits under the Gray policies issued to Danos and to share the costs of same with Chubb."[13] It also asserted claims for subrogation and breach of contract against Gray.

Gray answered the suit on April 24, 2025, denying many of the allegations made by Chubb in its Complaint.[14] Gray also asserted a counterclaim against Chubb, alleging that Chubb has breached its obligations under the policies it issued and under the Master Service Contract between Furmanite and Danos.[15] As a result of such breach, Gray contends that it is entitled to all litigation defense costs that it has incurred.[16] Furthermore, Gray argues that, on May 7, 2020, it and Transco settled all claims they had or may have had against Danos, Furmanite, and Gray, resulting in an agreement indemnifying Gray against claims related to the lawsuits from the subject explosion.[17] Thus, Gray seeks a declaratory judgment that Chubb must fully indemnify Gray, recoupment of any defense costs incurred, a finding that Chubb has violated La. R.S. §§22:1892 and 22:1973, and any damages therefrom.[18]

---

[12] *See id.* at ¶¶ 9, 25.
[13] *Id.* at ¶ 30.
[14] R. Doc. 19.
[15] *Id.* at ¶ 32.
[16] *Id.* at ¶¶ 35-36.
[17] *Id.* at ¶¶ 44-46.
[18] *Id.* at ¶ 48.

### A. Motion to Dismiss Counterclaim in Part under Rule 12(b)(6) and for a More Definitive Statement under Rule 12(e)

Chubb filed the instant motion to dismiss Gray's counterclaim in part under Fed. R. Civ P. 12(b)(6) and for a more definitive statement under Rule 12(e) on June 5, 2025.[19] Chubb asks the Court to dismiss Gray's counterclaim that Chubb breached contractual and statutory obligations to Gray as Chubb's additional insured, an all-purpose contractual indemnitee of Chubb's named insured (Furmanite), and as a contractual indemnitee following the May 2020 settlement.[20] Addressing the argument that Gray is Chubb's additional insured, Chubb states that because Gray has failed "to identify the specific insurance policy provision that Chubb allegedly breached," that failure alone renders the complaint deficient.[21] As to the argument that Gray is an indemnitee of Furmanite, Chubb again contends that "Gray fails to identify the specific contract provision that Chubb allegedly breached in pleading its breach-of-contract claim" and that, because they fail to do so, its counterclaim is deficient, and "it necessarily follows that Gray also failed to allege a bad-faith failure by Chubb," except as to Gray's capacity as Danos's insurer.[22] Regarding the May 7, 2020 settlement, Chubb argues that "Gray has no right to indemnity under the settlement agreement" because "the indemnity clause in the settlement agreement only applies to Transco-sought damages, of which there are none against Gray beyond

---

[19] R. Doc. 25.
[20] R. Doc. 25-1 at p. 1.
[21] *Id.* at pp. 13-15.
[22] *Id.* at pp. 16-17.

those Chubb seeks in this suit through subrogation, which subrogated claims are expressly reserved in the agreement."[23]

Gray responds that Chubb should be precluded from arguing that Gray is not Chubb's insured because Chubb has waived that argument.[24] Gray argues that Chubb knew that Gray believed it was Chubb's insured and that Chubb "on multiple occasions, specifically agreed and admitted that Gray is an insured under the [Chubb] Policy and stated that it had already tendered partial payment to Gray as an additional insured" under the policy."[25] Notwithstanding its waiver argument, Gray next contends that Gray is an additional insured under both the Master Service Contract and the Chubb policy itself because it is part of the "Company Group," which "is collectively comprised of the owners (Transco), Danos, and Danos' insurers (Gray), among others."[26] Gray states that "the waiver of subrogation applies to Company Group as a whole, the primary insurance endorsement applies to Company Group as a whole, and the indemnity provision applies to the Company Group as a whole," meaning that Gray is an additional insured under both the Master Service Contract and the Chubb policy.[27] Gray urges that Chubb seeks to interpret the contract "in an unreasonable or strained manner under the guise of contractual interpretation to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[28] As to its next argument, Gray points to a

---

[23] *Id.* at pp. 17-18.
[24] R. Doc. 28 at p. 11.
[25] *Id.* at p. 12.
[26] *Id.* at pp. 14-15.
[27] *Id.* at p. 15.
[28] *Id.* at p. 16 (citing *Carrier* v. *Reliance Ins. Co.,* 759 So.2d 37, 43 (La. 4/11/00)).

5

release of claims (the "Ruth's Chris Release") executed on May 7, 2020, and argues that "under this Agreement, it is clear that Transco and its insurers agreed to release all claims against Gray, agreed to waive any unasserted claims, and agreed to defend and indemnify Gray from any claims arising out of this litigation or the explosion."[29] To the extent the release does not extend to claims that Chubb may have against Gray, Gray claims that "Ace is barred from subrogating against Gray by the terms of the MSC and the [Chubb] Policy."[30] Lastly, Gray contends that the Master Service Contract requires Chubb and its insured to indemnify Gray from claims or liabilities asserted by members of the "contractor group" against members of the "company group" and that, as such, Chubb must indemnify Gray for any claims that it asserts against Gray.[31]

Chubb replies that "Gray's counterclaim remains deficient because it does not successfully identify any specific provision in Chubb's policy that confers additional-insured status on Gray" and that the "policy's additional-insured endorsements apply only to owners, lessees or contractors for whom Furmanite was 'performing operations.'"[32] Next, Chubb contends that the Ruth's Chris Release specifically reserves Chubb's ability to pursue any claims it may have or may exist against Gray and that its subrogation is against Gray as an insurer of Transco, not an insurer of Danos.[33] Lastly, Chubb argues that "[b]ecause Gray's waiver and estoppel theories

---

[29] *Id.* at pp. 17-20.
[30] *Id.* at p. 20.
[31] *Id.* at pp. 23-24.
[32] R. Doc. 29 at pp. 1-3 (internal citations omitted).
[33] *Id.* at p. 3.

collapse upon exclusion of the exhibits" attached to its opposition, such as its past conduct and correspondence with Chubb, the Court should reject those theories.[34]

### B. Motion to Exclude Exhibits to Gray's Opposition or, Alternatively, to Exclude Settlement-Related Exhibit and Convert Proceeding to Summary Judgment

Chubb filed its motion to exclude exhibits or, alternatively, to exclude settlement-related exhibit and convert proceeding to summary judgment on August 3, 2025.[35] In it, Chubb argues that the Court should exclude all the exhibits attached to Gray's Opposition[36] to Chubb's Motion to Dismiss in Part because the exhibits fall outside the bounds of the permissible materials that can be considered when evaluating a motion under Fed. R. Civ. P. 12(b)(6).[37] Alternatively, Chubb contends that the Court should exclude Exhibit A-7 as a settlement-related document prohibited under Fed. R. Evid. 408, "which prohibits the use of settlement communications to prove or disprove the validity or amount of a disputed claim."[38] Such documents, Chubb states, are routinely excluded by courts.[39] Lastly, Chubb urges that if the Court does consider those exhibits in deciding the motion, the Court should convert the proceeding to one for summary judgment and then permit supplemental briefing on the issue to "avoid premature adjudication on an incomplete record."[40]

---

[34] *Id.* at p. 5. This argument is the subject of a subsequent Motion to Exclude Exhibits filed by Chubb (R. Doc. 30), which is also addressed in the present Order and Reasons.
[35] R. Doc. 30.
[36] R. Doc. 28.
[37] R. Doc. 30-1 at pp. 3-4.
[38] *Id.* at p. 4.
[39] *Id.* at p. 5.
[40] *Id.* at p. 6.

Gray responds that the Court can consider the documents which it attached to its Response to Plaintiffs' Motion to Dismiss Counterclaim because those documents are "generally referenced" in the counterclaim.[41] Gray further argues that it is entitled to rely on these documents because it is "allowed to present evidence to controvert the contentions made in Ace's motion to dismiss" that is admissible and relevant.[42] Gray states that "even if the Court were to agree with Ace that the documents introduced by Gray are extrinsic, the appropriate remedy is to treat the motion as one made under Rule 56, not to exclude the exhibits."[43] Gray also notes that the Court need not consider the exhibits should it "find that there is ambiguity in the Ace policy or the Ruth's Chris Release," which supports the contention that the Court should deny Chubb's motion.[44] Regarding Chubb's argument concerning Exhibit A-7, Gray claims that Fed. R. Evid. 408 precludes evidence of conduct or statements during settlement negotiations when used to prove the validity or amount of a claim and that here, "the express purpose the March 2019 letter is offered was to establish that Ace waived its right to deny Gray's insured status."[45] Gray adds that "the express purpose for which Gray offered Exhibit A-7, Ace's representations that Gray is its insured, which Ace now claims are false, are evidence of Ace's bad faith under La. Rev. Stat. § 22:1892(1)(2)(a)."[46] For those reasons, Gray asks the Court to deny Chubb's motion.

---

[41] R. Doc. 34 at p. 1.
[42] *Id.* at p. 2.
[43] *Id.*
[44] *Id.* at p. 3.
[45] *Id.*
[46] *Id.* at p. 4.

8

Chubb replies that "[n]o exhibit attached to Gray's opposition is referenced in the counterclaim," that "[n]o newly proffered exhibit is 'central to the claim,'" and that "[n]o waiver or estoppel theory based on the newly proffered exhibits is pleaded."[47] Chubb contends that Gray's exhibits do not meet the standard for consideration under Rule 12(b)(6) and that "Gray's counterclaim does not even have an adoption or incorporation clause for the exhibits it wants the Court to consider in ruling upon Chubb's motion to dismiss," offering "only that it 'generally referenced' those documents in its counterclaim."[48] Furthermore, Chubb urges that Fed. R. Evid. 408 bars courts from using settlement communications to prove liability or waiver, meaning that Exhibit A-7 is "both extrinsic and inadmissible."[49]

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant, or counter-defendant, can seek dismissal of a complaint, or any part of it or a counterclaim, for failure to state a claim upon which relief may be granted.[50] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[47] R. Doc. 35 at p. 2.
[48] *Id.* at p. 5.
[49] *Id.* at p. 6.
[50] Fed. R. Civ. P. 12(b)(6).
[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

9

the reasonable inference that the defendant is liable for the misconduct alleged."[52] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[53]

In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[54] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[55] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[56] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[57]

### C. Rule 12(e) Standard

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[58] "The motion must be made before filing a responsive pleading and must point out the

---

[52] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).
[53] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).
[54] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[55] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[56] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[57] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).
[58] Fed. R. Civ. P. 12(e).

defects complained of and the details desired."[59] The standard a court should use for evaluating a 12(e) motion is "whether the complaint is 'so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'"[60]

### D. Rule 12(d) Standard

Fed. R. Civ. P 12 (d) provides that

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[61]

Whenever a trial court "considers matters outside the pleadings, the motion to dismiss *should* be treated as a motion for summary judgment, and the proceedings must comport with the hearing and notice requirements of Fed. R. Civ. P. 56(c)."[62]

### III. ANALYSIS

#### A. Motion to Exclude Exhibits or, alternatively, Convert Proceeding to Summary Judgment

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."[63]

---

[59] *Id.*
[60] *Phillips v. ABB Combustion Engineering, Inc.*, No. CIV.A. 13-594, 2013 WL 3155224, at *2 (E.D. La. June 19, 2023) (quoting *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006)).
[61] Fed. R. Civ. P. 12.
[62] *Partridge v. Two Unknown Police Officers of City of Houston, Tex.,* 791 F.2d 1182, 1189 (5th Cir. 1986).
[63] *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

This test is a conjunctive one; documents must meet all three requirements for a court to properly consider them when evaluating a motion under Rule 12(b)(6).

Plaintiff Chubb attaches five exhibits to its Motion to Dismiss Counterclaim: (1) the primary insurance policy, (2) the excess policy, (3) the Danos/Furmanite Master Service Contract, (4) the May 7, 2020 release of claims,[64] and (5) a declaration from Chubb Senior Vice President Jacqueline R. Robinson regarding the truth of the exhibits attached.[65] Each of these is referenced in the counterclaim and are central to Defendant/Counter-Plaintiff Gray's counterclaim.[66] Thus, the Court finds that these exhibits are properly considered in Plaintiff Chubb's Motion to Dismiss Counterclaim in Part under Fed. R. Civ. P. 12(b)(6). Defendant Gray attaches twelve exhibits to its Response in Opposition to Plaintiffs' Motion to Dismiss Counterclaim in Part.[67] These exhibits include state court pleadings from underlying lawsuits resulting from the explosion at the Transco plant,[68] communications from Chubb requesting to share litigation costs,[69] communications from Gray's counsel regarding the request,[70] a confidentiality agreement between Chubb and Gray,[71] a request from Gray to Chubb to reimburse it for legal services and costs,[72] a settlement offer from

---

[64] Sometimes referred to by the parties as the "Ruth's Chris Release."
[65] R. Docs. 25-4, 25-5, 25-6, 25-7, and 25-8.
[66] *See* R. Doc. 19 at ¶ 27 ("Pursuant to the Danos/Furmanite MSC, Ace issued to Furmanite Policy HDO G24556943001, a CGL policy, with a policy period from October 1, 2015 through October 1, 2016"); at ¶ 30 (The ACE Excess Policy is excess of the Ace CGL Policy."); at ¶ 17 ("Danos and Furmanite entered into a Master Services Contract."); at ¶ 44 ("On May 7, 2020, Ace and Transco released, compromised, and settled any and all claims they had or may have had against Danos, Furmanite, and Gray.")
[67] R. Docs. 28-2, 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 28-9, 28-10, 28-11, 28-12, and 28-13.
[68] R. Doc. 28-2.
[69] R. Doc. 28-3.
[70] R. Doc. 28-4.
[71] R. Doc. 28-5.
[72] R. Doc. 28-6.

Gray to Chubb to settle claims,[73] Chubb's response to the offer,[74] correspondence from Gray regarding legal services invoices,[75] e-mail correspondence regarding settlement of claims,[76] further correspondence regarding claims,[77] additional pleadings from a state court case regarding the explosion,[78] and Gray's excess commercial general liability policy for Danos.[79] Gray argues that the Court "may consider all of the documents attached to Gray's Opposition Memorandum without the need to convert Ace's motion to a Rule 56 motion as these documents are generally referenced in Gray's Counterclaim."[80] Chubb counters that none of the exhibits attached to Gray's opposition are referenced in the counterclaim or are "central" to the claim.[81]

The Court agrees that some of the exhibits attached to Gray's Opposition fall outside of what may be properly considered in this 12 (b)(6) Motion. As set forth earlier, an exhibit must be (1) attached to the motion, (2) referenced in the counterclaim, and (3) central to the Counter-Plaintiff's counterclaim to be considered when deciding a motion under Rule 12(b)(6).[82] Each of these exhibits satisfies the first requirement because it is attached to the motion. Not all exhibits meet the second requirement, especially the settlement communications contained in the attached exhibits; these exhibits are not referenced in the counterclaim.[83] The only

---

[73] R. Doc. 28-7.
[74] R. Doc. 28-8.
[75] R. Doc. 28-9.
[76] R. Doc. 28-10.
[77] R. Doc. 28-11.
[78] R. Doc. 28-12.
[79] R. Doc. 28-13.
[80] R. Doc. 34 at p. 1.
[81] R. Doc. 35 at p. 2.
[82] *See Maloney Gaming Mgmt., L.L.C.*, 456 F. App'x at 340.
[83] R. Docs. 28-7—28-11.

"settlement" referenced in the counterclaim refers to the May 7, 2020 settlement agreement (the "Ruth's Chris Release"), which is attached to Plaintiff Chubb's Motion to Dismiss.[84] Because the test is a conjunctive one, an exhibit failing to meet a single element cannot properly be considered.[85]

Having found that some of the exhibits attached to Gray's response in opposition were extrinsic to the pleadings and cannot properly be considered under Rule 12, the Court now considers whether to exclude the documents or whether to convert the motion to one for summary judgment under Fed. R. Civ. P. 56. Under Rule 12, a district court has "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."[86] One such consideration as to whether a court should accept matters outside of the pleadings is whether consideration of the material "facilitates the disposition of the case."[87]

Plaintiff Chubb, while first asking the Court to exclude the documents and consider its motion, alternatively argues that "[i]f the Court declines to exclude Gray's exhibits and instead considers them in ruling on Chubb's motion to dismiss, then the proceeding must be treated as one for summary judgment under Federal Rule of Civil Procedure 12(d)."[88] Defendant Gray agrees that "even if the Court were to agree with

---

[84] R. Doc. 25-7.
[85] The Court also notes that Gray does not plead the waiver or estoppel arguments in its counterclaim (R. Doc. 19).
[86] *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, n. 3 (5th Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)).
[87] *Woods v. City of Galveston*, 5 F. Supp. 2d 494, n. 3 (S.D. Tex. 1998); *see also* § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C FED. PRAC. & PROC. CIV. § 1366 (3d ed.).
[88] R. Doc. 30-1 at p. 6.

14

Ace that the documents introduced by Gray are extrinsic, the appropriate remedy is to treat the motion as one made under Rule 56, not to exclude the exhibits."[89] Rather than exclude the evidence, the Court finds it proper to convert this proceeding to one for summary judgment under Fed. R. Civ. P. 56 as reviewing the counterclaim under the lens of Rule 56 might facilitate disposition of this portion of the case. As such, the Court converts Defendant Gray's opposition to Plaintiff Chubb's Motion to Dismiss Counterclaim in Part into a Motion for Summary Judgment and will provide the parties an opportunity to respond.[90]

### B. Motion to Dismiss Counterclaim in Part under Rule 12(b)(6) and for a More Definitive Statement under Rule 12(e)

Because the Court has converted the Defendant/Counter-Plaintiff Gray's response in opposition to a motion for summary judgment, the Court finds that the Motion to Dismiss Counterclaim in Part under Rule 12(b)(6) and for a More Definitive Statement under Rule 12(e) is now moot and denies it as such.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude Exhibits to Gray's Opposition or, Alternatively, to Exclude Settlement-Related Exhibit and Convert Proceeding to Summary Judgment Under Rule 12(d)[91] is **GRANTED**.

---

[89] R. Doc. 34 at p. 2.
[90] *Clark v. Tarrant Cnty., Texas*, 798 F.2d 736, 746 (5th Cir. 1986) ("[A]fter the parties receive notice that the court could properly treat such a motion as one for summary judgment because it has accepted for consideration on the motion matters outside the pleadings, the parties must have at least ten days before judgment is rendered in which to submit additional evidence."); *see also Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1284 (5th Cir. 1990) ("Whenever a motion to dismiss is treated as a motion for summary judgment, the nonmovant is entitled to the procedural safeguards of Rule 56.").
[91] R. Doc. 30.

**IT IS FURTHER ORDERED** that Defendant's Response in Opposition[92] is **CONVERTED** to a Motion for Summary Judgment under Fed. R. Civ. P. 56.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to re-file Gray Insurance Company's Response in Opposition[93] into the record as a Motion for Summary Judgment on Counter-Plaintiff Gray Insurance Company's Counterclaim. Any response in opposition by Plaintiff/Counter-Defendant Chubb must be filed by March 27, 2026, and any reply must be filed by Defendant/Counter-Plaintiff Gray by April 3, 2026. The motion will be submitted on that date.

**IT IS FURTHER ORDERED** Plaintiffs ACE American Insurance Company and ACE Property and Casualty Insurance Company's Motion to Dismiss Counterclaim in Part Under Rule 12(b)(6) and for a More Definite Statement Under Rule 12(e)[94] is **DENIED as moot**.

New Orleans, Louisiana, March 9, 2026.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[92] R. Doc. 28.
[93] *Id.*
[94] R. Doc. 25.